FILED

2010 Dec-06  AM 09:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL MINERALS CORPORATION, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:10-CV-2095-LSC |
| | ] | |
| NUCOR STEEL TUSCALOOSA | ] | |
| INC., and NUCOR CORPORATION, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Pending is a Motion to Dismiss (Doc. 31), filed on August 13, 2010, by

Defendants Nucor Steel Tuscaloosa, Inc., ("NSTI") and Nucor Corporation

("Nucor").  Plaintiff Global Minerals Corporation ("Global Minerals") filed

suit against NSTI and Nucor making six claims for relief,[1] all arising out of a

commercial relationship with NSTI: breach of contract, breach of implied-in-

fact contract, intentional misrepresentation, negligent misrepresentation,

and a general claim against Nucor, NSTI's parent company.  (Doc. 1 at 8-14.)

---

[1]Global Minerals has since withdrawn the claim based on breach of the covenant of good
faith and fair dealing.  (Doc. 44 at 16.)

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, Defendants argue the following:  the plain language of various purchase orders defeats the breach of contract claim, Alabama law prevents an implied contract and an express contract covering the same subject matter, Global Minerals fails to plead the elements of negligent or intentional misrepresentation, and Global Minerals fails to plead the necessary elements to pierce the corporate veil between Nucor and NTSI or to establish an agency relationship between the two.  (Doc. 32.)  The issues raised in Defendants' motion to dismiss are now ripe for decision.  After considering the presented legal arguments and evidence, the motion is due to be granted in part and denied in part.

II.    Facts.[2]

Nucor is the largest steel producer in the United States and owns NSTI. NSTI manufactures steel products at a plant in Tuscaloosa, Alabama.  These entities have common directors, officers, managers and employees. Nucor also consolidates annual earnings and production from two hundred

---

[2]Unless otherwise indicated, the facts are taken from Plaintiff's Complaint and the purchase orders attached to it as Exhibits 1-3.

operating facilities—including NSTI—into one report.

In 2008, NSTI sought ferrosilicon from Global Minerals, an ingredient in various steel products, such as alloy plates, coil, and bars.  Ferrosilicon is mined in China, and in early 2008, prices for it were rising.   NSTI approached Global Minerals, requested quotes for ferrosilicon, and received a quote for several hundred tons at $ .88 per pound, for delivery to Tuscaloosa, Alabama.  In March 2008, NSTI submitted a purchase order for a trial purchase.  This is the first of three purchase orders that form the basis of the current dispute.

The March 2008 purchase order sets out the following in particular:

Quantity—100 net tons of product during the fourth quarter of 2008 (October through December). This represents a trial quantity of product.  NSTI makes no committment [sic] or guarantee with regard to the actual quantity of product released under this purchase order, however, shall not exceed 100 net tons without agreement with Global Minerals.

(Doc. 1-1 at 1.)[3]

Then on June 3, 2008, NSTI issued another purchase order, "subject to satisfactory performance of the trial material" and raised the price it would pay to $1.48 per pound.  (Doc. 1-2 at 1.)  This purchase order set out the following regarding quantity:

> Quantity—600 net tons of product during the period September through December 2008.  NSTI makes no commitment or guarantee with regard to the actual quantity of product released under this purchase order, however, shall not exceed 600 net tons of product without agreement with Global Minerals.

(Doc. 1-2 at 1.)

After the parties substituted "metric tons" for "net tons" to match the quantities on Global Minerals' own orders to its Chinese supplier, Global Minerals procured 600 metric tons from its supplier and alerted NSTI upon the ferrosilicon's September 2008 arrival in New Orleans.   During this period, the price for ferrosilicon dropped, eventually falling to about $ .67

─────────────

[3] Plaintiff's complaint does not suggest whether NSTI took delivery of this 100 ton quantity.

per pound in December 2008.  NSTI requested that Global Minerals adjust the $1.48 per pound price down to $1.32 per pound.   Global Minerals declined.  In the last quarter of 2008, NSTI took delivery of about 27 metric tons under the June 2008 purchase order.

After further negotiations between the parties, NSTI issued the third purchase order on January 9, 2009, which attached the June 3, 2008 purchase order and added the following language:

> This change order is issued to extend the end date of this blanket purchase order to June 30, 2009, based on a sincere request from Global Minerals to do so. . . . NSTI continues to make no commitment or guarantee with regard to the actual quantity of product released under this purchase order. However, NSTI will take all of its purchase requirement during the period January through July 2009 from Global Minerals.

(Doc. 1-3 at 2.)

NSTI took delivery of 108 metric tons from Global Minerals during the first half of 2009.  On July 9, 2009, NSTI alerted Global Minerals that the ferrosilicon purchase order was closed.

III.    Standard of Review.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).[4]    But the "plaintiff's obligation to

---

[4]In *Bell Atlantic Corp. v. Twombly*, the U.S. Supreme Court abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (internal citations omitted).  The plaintiff must plead "enough facts to state a claim that is plausible on its face."  *Id.* at 570.  Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed."  *Id.*

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

---

which would entitle him to relief" set forth in *Conley v. Gibson*, 355 U.S. 41 (1957). *Bell Atl. Corp.*, 550 U.S. at 560-63.  The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.

'show[n]'—'that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the U.S. Supreme Court suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  Importantly, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1951-52). However, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).

IV.    Analysis.

Initially, this Court notes the parties' agreement that Alabama law controls interpretation and enforcement of the purchase orders and that Delaware law applies to the claim against Nucor.

A.    Breach of Contract.

Global Minerals argues that it has alleged facts sufficient to show NSTI breached two separate contracts: the June 2008 purchase order for 600 tons of ferrosilicon, breached when NSTI purchased 27 tons; and the January 2009 purchase order for all of NSTI's first-half 2009 ferrosilicon requirements, breached when NSTI purchased 108 tons.  NSTI contends that the facts show one fulfilled contract: the January 2009 purchase order that replaced the June 2008 purchase order.  (Doc. 45 at 3.)  NSTI argues the implausibility of any breach because the January 2009 contract was a requirements contract with no specified quantity.  (Doc. 45 at 4.)   NSTI thus "had no obligation to purchase a set quantity of ferrosilicon." (Doc. 45 at 4.)

To claim contractual breach, Global Minerals must plausibly allege that NSTI had a contractual obligation, that NSTI breached the obligation, and that Global Minerals suffered resulting, quantifiable damages.  *See*

*Mahoney v. Loma Alta Prop. Owners Ass'n, Inc.*, 4 So. 3d 1130 (Ala. 2008).

Global Minerals alleges the following facts from its pleadings to establish the June 3, 2008 purchase order as a contract that NSTI later breached:

- This purchase order is issued by [NSTI] for 75% ferrosilicon to be delivered during the period September through December 2008; (Doc 1-2 at 1.)

- Price—the firm delivered price during the period September through December 2008 shall be $1.48 per pound of contained silicon; (Doc. 1-2 at 3.)

- Quantity—600 net tons of product during the period September through December 2008; (Doc 1-2 at 1.)

- The quantity term of the June 3, 2008 Purchase Order was subsequently modified by agreement of the parties and confirmed in writing by NSTI on June 5, 2008 from 600 net tons to 600 metric tons; (Doc. 1 at 4.) and

- During the period of September to December 2008, NSTI took delivery of only approximately 27 out of the 600

metric tons of ferrosilicon under the subject June 3, 2008

Purchase Order. (Doc. 1 at 6.)

Global Minerals then alleges the following facts from its pleadings to
establish the January 15, 2009 purchase order as a contract that NSTI later
breached:

- January 15, 2009 . . . This purchase order is issued by NSTI

  for 75% ferrosilicon to be delivered during the period

  September through December 2008; (Doc 1-3 at 3.)

- The price shall be changed to a formula basis . . . . A price

  cap of $1.48 per pound contained silicon, delivered to

  NSTI, shall also be in effect; (Doc. 1-3 at 2.)

- NSTI will take all of its purchase requirement during the

  period January through July 2009 from Global Minerals;

  (Doc. 1-3 at 2.)

- Quantity—600 net tons of product during the period

  September through December 2008; (Doc. 1-3 at 3.) and

- From January to June 2009, NSTI took delivery of only

  approximately 108 metric tons of ferrosilicon from Global,

and thereafter refused to take any further material. (Doc.

1 at 8.)

As aggregate damage for both breaches, Global Minerals asserts that it
"suffered damages consisting . . . of $1,200,000.00" and further desires an
award of "$3,000,0000.00, or treble the compensatory damages, along with
an award of attorney's fees." (Doc. 1 at 9.)

On the other hand, NSTI relies on this language from the June 3, 2008
purchase order to establish that taking twenty-seven tons of ferrosilicon did
not breach the purchase order:

- NSTI makes no commitment or guarantee with regard to
  the actual quantity of product released under this
  purchase order. (Doc. 1-2 at 1)

NSTI then relies on the following facts to argue that, in any event, the
January 15, 2009 requirements contract replaced the June 3, 2008 purchase
order, and NSTI did not breach the requirements contract because it took
delivery of over one hundred tons of ferrosilicon:

- This change order is issued to extend the end date of this
  blanket purchase order to June 30, 2009; (Doc. 1-3 at 2.)

and

- NSTI continues to make no commitment or guarantee with regard to the actual quantity of product released under this purchase order. (Doc. 1-3 at 2.)

Global Minerals alleges a plausible breach of contract claim.  The June 3, 2008 purchase order states that NSTI will purchase 600 net tons of ferrosilicon.  The purchase order then reaffirms the 600 net ton number by advising Global Minerals that NSTI would not purchase more than that without Global Minerals' consent.  And the parties use the 600 ton number when modifying the purchase order to call for metric tons instead of net tons.  By stating that NSTI made no commitment regarding the actual quantity, the purchase orders appear to allow some deviation from 600 metric tons, but the parties repeatedly emphasized 600.  NSTI ordered less than 5% of the 600 ton amount under that purchase order, which remained open until December 2008.  Only on January 9, 2009, after the time for performance had passed, did NSTI offer to extend the June 3, 2008 purchase order.  In sum, Global Minerals alleges a plausible breach of the June 3, 2008 purchase order as an agreement separate from the January 15, 2009

purchase order.

Regarding the requirements contract created by January 15, 2009 purchase order, Global Minerals relies on *Simcala, Inc. v. American Coal Trade* to argue NSTI's taking 108 metric tons of ferrosilicon during the first half of 2009 still constitutes a breach.  821 So. 2d 197 (Ala. 2001).  In *Simcala,* the Alabama Supreme Court addressed a requirements contract scenario and ruled that a buyer may not reduce its requirements to a level unreasonably disproportionate to an agreed-upon estimate, even in good faith.  821 So. 2d at 200.  The Alabama Supreme Court upheld the trial court's determination that buying 41% of the agreed-upon estimate was unreasonably disproportionate.  *Id.* at 203.

The January 15, 2009 purchase order states that NSTI will purchase all of its ferrosilicon requirements from Global Minerals and incorporates the quantity language of the June 3, 2008 purchase order, listing 600 tons with the caveat of making no commitment on actual quantity.  A requirements contract would not make a commitment to a set amount, implying the 600 ton quantity operates as an estimate.   By the end of June 2009, NSTI had taken 18% of the 600 ton quantity listed in its purchase order, an amount

lower than the 41% that *Simcala* found unreasonably disproportionate. Global Minerals thus states a plausible claim for breach of the January 2009 purchase order.

    B.    Breach of Implied-in-Fact Contract.

Global Minerals alleges that it had an implied-in-fact contract with NSTI, which NSTI then breached.  (Doc. 1 at 9.)  "[T]he law may recognize an implied contract where the existence of an express contract on the same subject matter is not proven." *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996).  Generally though, "claims of both an express and an implied contract on the same subject matter are . . . incompatible." *Id*.  The parties do not dispute the existence of an agreement; they dispute whether NSTI breached an agreement.  The parties have an express agreement covering 2008 and 2009 purchases of ferrosilicon.  Global Minerals thus cannot claim the existence of an implied-in-fact contract.

    C.    Misrepresentation.

Global Minerals claims that NSTI either intentionally or negligently misrepresented that it would take delivery of the ferrosilicon. (Doc. 1 at

12.)   To establish misrepresentation, a plaintiff must show (1) a misrepresentation of an existing material fact; (2) scienter, either intentional, reckless, or negligent; (3) justifiable reliance; and (4) resulting damage.  *See Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997). Important at the motion to dismiss stage is Rule 9(b)'s proviso: "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

The complaint alleges the following:

- NSTI represented that it would purchase from Global and take delivery of . . . 600 metric tons of ferrosilicon;

- Global agreed to a renegotiation of the sale price;

- NSTI never intended to and did not comply with its agreed-upon obligations. . . .[because it tried] to induce and motivate Global to provide Nucor's Decatur plant with more advantageous pricing;

- Global was ignorant of the true facts; and

- Global has been damaged in an amount as best can be estimated of $ 1,200,000.00.

(Doc. 1 at 12-13.)

NSTI contends that "Plaintiff has failed to identify any representation of a then presently existing fact." (Doc. 32 at 21.)  But Plaintiff's complaint reveals otherwise.  Global Minerals alleges that NSTI never intended to comply with its contractual obligations.  Global Minerals has plausibly alleged that NSTI promised to purchase 600 tons, a factual statement existing at the time of contracting. The statement's truth hinges on NSTI's state of mind. If NSTI planned to avoid complying with the contract, the contractual statement becomes a misrepresented fact.  Because the Federal Rules of Civil Procedure permit Global Minerals to allege NSTI's state of mind generally, Global Minerals has plausibly pleaded misrepresentation.

Yet the Court doubts Global Minerals' ability to recover under a misrepresentation theory, either intentional or negligent.  For example, the complaint suggests the falling price of ferrosilicon as the reason for any noncompliance, an event occurring after the June 2008 purchase order and negating any presently existing fact.  In addition, justifiable reliance remains questionable, for two reasons: first, the purchase orders state that NSTI made no guarantee of actual quantity, abrogating the reliance Global

Minerals could place on a 600 ton quantity and second, after January 2009,

NSTI would have misrepresented the same fact twice.

Nevertheless, dismissing Global Minerals' misrepresentation claim is

inappropriate.  Misrepresentation is factually intensive and dismissing the

claim would not end the action.   Most importantly though, the

misrepresentation claim is plausible.  Thus, the Court believes declining to

dismiss the claim and waiting for the discovery process to flesh out a factual

record remains more appropriate

>   D.   Claims Against Nucor.

Global Minerals argues that its complaint plausibly claims Nucor's

liability[5] because an agency relationship exists between Nucor and NSTI.

"When one corporation acts as the agent of a disclosed principal

corporation, the latter corporation may be liable on contracts made by the

agent," whether or not the principal is a party to the contract.  *Phoenix*

---

[5]Global Minerals also argues that its complaint plausibly claims Nucor's liability because Nucor treated NSTI as its alter-ego.  But Delaware law requires an element of fraud or injustice to pierce the corporate veil under an alter-ego theory.  *See Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Id.*  Though Global Minerals argues that the corporations' relationship creates injustice, (Doc. 44 at 14.) it has not alleged any fraud or injustice in its complaint.

*Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d. Cir. 1988).

Liability on an agency theory requires Global Minerals to allege first an arrangement between NSTI and Nucor so that NSTI acted on Nucor's behalf within agency principles.  *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 531 (D. Del. 2008).  Global Minerals alleges that Nucor "owns, operates, and/or controls defendant NSTI." (Doc.1 at 15.) In addition, Global Minerals alleges that "there are common directors, officers, managers and/or employees between [Nucor] and NSTI." (Doc. 1 at 15.)  NSTI also provides its earnings and production volumes to Nucor so that Nucor can report all earnings on a consolidated basis.  (Doc. 1 at 15.) Global Minerals plausibly alleges some sort of arrangement.

Agency principles also require Global Minerals to allege the plausible existence of authority, either actual or apparent.  *See Billops v. Magness Constr. Co.*, 391 A.2d 196, 197 (Del. 1978).  For actual authority, Global Minerals must show that Nucor prompted NSTI's believing Nucor wanted NSTI to enter into contracts on its behalf.  *See id.* at 197.  And Global Minerals must establish the relevance of  the corporations' arrangement to its claims of contractual breach.  *See Trevino*, 583 F. Supp. 2d at 531 (D. Del. 2008);

*Mobil Oil. Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 271 (D. Del. 1989). Global Minerals alleges that Nucor "exercised influence over the daily management of NSTI," "knew or should have known about the breaches of contract," and "ratified, accepted or otherwise approved NSTI's breaches of contract and tortious conduct against Plaintiff Global." (Doc. 1 at 15.) Global Minerals plausibly alleges the existence of actual authority: If Nucor directed NSTI to enter into a contract, then the arrangement is relevant to a breach of that contract.

Nevertheless, Defendants argue that "Plaintiff has not plead [sic] the elements of an agency relationship, any specific action by Nucor which would give rise to such a relationship, nor how Nucor ratified, accepted or approved NSTI's acts." (Doc 45 at 2.)  Global Minerals has plausibly pleaded the elements of agency: an arrangement and actual authority. More importantly, Defendants fail to suggest how Global Minerals would possess sufficient facts to set out a "specific action" between Nucor and NSTI at this stage in the litigation, prior to discovery.  Likewise, showing "how" Nucor ratified, accepted, or approved certain acts requires the discovery process. Dismissing Global Mineral's claim against Nucor would be premature.

Page 20 of  21

V.     Conclusion.

For the reasons stated above, Defendant's motion to dismiss is due to be granted in part and denied in part.  Defendants' motion to dismiss is granted on Global Minerals' second and third claims for relief, claims for breach of implied-in-fact contract and breach of the covenant of good faith and fair dealing respectively.  Defendants' motion to dismiss is denied as to Global Minerals' first, fourth, fifth, and sixth claims for relief, breach of contract, intentional misrepresentation, negligent misrepresentation, and against Nucor.  A separate order conforming with this opinion will be entered.

Done this 3rd day of December 2010.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE